UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

In re Application of

    PILATUS BANK PLC,

    Applicant,

Pursuant to 28 U.S.C. § 1782 for Judicial
Assistance in Obtaining Evidence for Use in
Foreign and International Proceedings.

_____/

**DECLARATION OF OKKO HENDRIK BEHRENDS IN SUPPORT OF PILATUS BANK PLC'S PETITION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN FOREIGN AND INTERNATIONAL PROCEEDINGS**

    I, Okko Hendrik Behrends, under penalty of perjury under the laws of the United States of America hereby declare the following:

    1.    I am a German lawyer (*Rechtsanwalt*) in Frankfurt *am Main* Germany with more than 20 years of experience. I am a partner in the law firm GSK Stockmann Rechtsanwälte Steuerberater Partnerschaftsgesellschaft mbB ("**GSK Stockmann**"). My specialization is banking and finance law. This includes representing banks in front of the European Central Bank ("**ECB**").

    2.    The ECB has its seat in Frankfurt am Main Germany. However, it is a European institution. Its decisions are therefore subject to judicial review by the Court of Justice of the European Union, which has its seat in Luxembourg. The Court of Justice of the European Union comprises, *inter alia*, the Court of Justice and the General Court (Art. 19(1) Treaty on European Union). For purposes of the actions discussed in this declaration, the General Court is the court of first instance and decisions of the General Court can be appealed to the Court of Justice but only on points of law.

3.	The primary role of the ECB is in the area of monetary policy. However, Council Regulation (EU) No. 1024/2013 also conferred on the ECB specific tasks concerning policies relating to the prudential supervision of credit institutions. This includes under certain circumstances and subject to certain limitations the power to withdraw the authorisation of credit institutions. The national supervisory authorities of the member states of the European Union retain certain powers but exercise them under the overall responsibility of the ECB and subject to the ECB's ability to intervene directly.

4.	I represent Pilatus Bank plc, a Bank in Malta (the "**Bank**"). Malta is one of the Member States of the European Union.

5.	I commenced the representation of the Bank in 2018. At that time, I was a partner in the Frankfurt office of DLA Piper UK LLP. Effective October 31, 2019, I left DLA Piper UK LLP and joined the law firm GSK Stockmann as a partner in its Frankfurt office. I continued and still continue to represent the Bank.

6.	On November 2, 2018, the ECB revoked the authorization of the Bank (the "**License Withdrawal Decision**" - Annex 1). By means of an application dated January 15, 2019, the Bank asked the General Court of the European Union to annul this decision pursuant to Art. 264 of the Treaty on the Functioning of the European Union (the "**Action for Annulment**" - Annex 2). The Action for Annulment received the case number T-27/19. On March 28, 2019, the ECB lodged a defense of the same date (Annex 3).

7.	The License Withdrawal Decision is based on the fact that "according to a press release published by the U.S. Department of Justice, on 19 March 2018 Mr Ali Sadr was arrested in the United States on a six-count indictment." *See* page 5 of the License Withdrawal Decision.

8.	The Bank challenged the License Withdrawal Decision on behalf of the Bank, *inter alia*, because the ECB failed to give sufficient weight to the presumption of innocence.

9.      It is my understanding that Mr. Sadr has in the meantime been fully exonerated of all charges in the United States.

10.     By way of further background to the dispute on the License Withdrawal Decision, I attach a Report for the Hearing that was prepared by the Judge-Rapporteur in the Action for Annulment and which I received on October 15, 2020 (Annex 4). The Report for the Hearing summarizes the parties' arguments from the point of view of the Judge-Rapporteur for purposes of the upcoming oral hearing.  The parties are given the opportunity at the hearing to comment on the Report for the Hearing[1].

11.     A key issue in connection with the Action for Annulment concerns the representation of the Bank following the imposition on the Bank of the so called "Competent Person," which in the present case is the U.S. citizen Lawrence Connell. The previous position of the ECB as well as the Maltese supervisory authority (Maltese Financial Supervisory Authority or "**MFSA**") on this issue was that the Competent Person (i.e. Mr Connell) is the sole and exclusive representative of the Bank and that the Bank is therefore fully deprived of any ability to act through its ordinary representatives.

12.     This view of the ECB and the MFSA has been rejected in decisions of the Maltese Court of Appeal[2], the European Court of Human Rights[3] and the Grand Chamber of the Court of Justice of the European Union[4] (each of those cases concerned other banks in analogous situations to that of Pilatus Bank).

---

[1] The Report for the Hearing contains a number of inaccuracies which will have to be pointed out by the Bank at the hearing.
[2] Decision of the Court of Appeal of Malta dated 5 November 2018 in the case Niemelä, Lehto, Nemea PLC v MFSA. The decision is available on the court's website but only in the Maltese language. The ECB has submitted an English translation as Annex B.6 of its Defence – Annex 3.
[3] Judgment dated 21 October 2003 of the European Court of Human Rights in the case of Credit and Industrial Bank v Czech Republic (Application no. 29010/95) and judgement dated 24 November 2005 of the European Court of Human Rights in the case of Capital Bank AD v Bulgaria (Application no. 49429/99). These decisions are available on the website of the European Court of Human Rights (https://www.echr.coe.int).
[4] Trasta Komcerbanka and others v ECB Joined Cases C-663/17 P, C-665/17 P and C-669/17 P
The decision is available on the website of the Court of Justice (https://curia.europa.eu).

13. The ECB and the MFSA now accept me as the legal representative of the Bank (as appointed by the Bank's Board of Directors) for purposes of pursuing the Bank's remedies against the ECB's decisions, including the License Withdrawal Decision (paras 47 and 48 of the ECB's Defense – Annex 3).

14. A further remedy to be lodged by the Bank will be an action for damages pursuant to Art. 340 Treaty on the Functioning of the European Union (the "**Proposed Damage Claim**"). This action will have to be lodged within a period of five years from the occurrence of the event giving rise thereto (Art. 46 of the Statute of the Court of Justice of the European Union). The action for damages is crucial because a successful action for annulment merely results in the relevant act (in the present case, the License Withdrawal Decision) being declared void with retroactive effect.

15. An action for damages under European law is a separate and independent remedy. The action for damages is thus not formally dependent on the Bank's Action for Annulment (although the outcome of the Action for Annulment is likely to be relevant) and it is also not limited to the consequences of the limited category of acts that are reviewable based on an action for annulment.

16. The Proposed Damage Claim would not be excluded even if the Action for Annulment was dismissed on the grounds that the License Withdrawal Decision was legal.

17. Even a legal license withdrawal does not justify the violation of the Bank's fundamental rights which consists in the fact that the Bank was deprived of independent representation and the adoption of measures which were contrary to the financial and other interests (e.g. reputational interests) of the Bank and that the Bank's ordinary lawful representatives were deprived of any influence with respect to the Bank and information about the Bank. The position of the Bank is that the Bank and its resources, as well as the

nominal representation of (and control over) the Bank, were used in a manner that was opposed to the interests of the Bank.

18. The position of the Bank is that the Competent Person was not allowed to act as an independent representative of the Bank who pursues the best interests of the Bank, but rather was given instructions by the ECB and the MFSA and was subject to obligations and expectations which are contrary to the role of a genuine representative of the Bank as well as contrary to the interests of the Bank. The position of the Bank is also that the Competent Person (as an administrator who takes full and unrestricted control over a bank) is contrary to European law and applicable national law and that specifically the appointment and use of the Competent Person in the present case were illegal.

19. It therefore follows that any and all information about and evidence with respect to the appointment and the activities of the Competent Person is relevant for the Proposed Damage Claim even to the extent that the Competent Person dutifully complied with the instructions he was given and acted appropriately from the point of view of the ECB and the MFSA.

20. I am not aware of any legal reason why the European Court of Justice should not take into account evidence that is obtained on the basis of judicial assistance by the courts of the United States. The Court of Justice of the European Union strongly supports the concept of judicial cooperation and is dependent on such cooperation in numerous contexts. Questions of fact will be adjudicated by the General Court.

21. Mr. Connell is not expected to be joined as a party to the Action for Annulment.

22. Cases such as the present case, moreover, raise fundamental issues as to the rule of law. This is evidenced by the fact that the Court of Justice assigned an analogous case

(the case of Trasta Komercbanka[5]) to the Grand Chamber of the Court of Justices, which is composed of 15 judges and an Advocate General. The president of the Court of Justice has compared an assignment of a case to the Grand Chamber to the granting of *certiorari* by the U.S. Supreme Court.

23. Judicial assistance by the courts of the United States also appears appropriate because the Bank's representatives are in a particularly difficult situation since they currently do not have access to the Bank as an institution.

24. Obtaining evidence through the courts of the United States (i.e. his home jurisdiction) does not appear to create any undue burden on Mr. Connell (especially since I understand that his professional background and training is that of a lawyer in the United States).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of November, 2020

By: *O. H. Behrends*
Okko Hendrik Behrends

---

[5] Trasta Komcerbanka and others v ECB Joined Cases C-663/17 P, C-665/17 P and C-669/17 P
The decision is available on the website of the Court of Justice.
https://curia.europa.eu