UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


In re:  Pilatus Bank PLC


Pilatus Bank PLC

     v.　　　　　　　　　　　　Civil No. 20-mc-94-JD
　　　　　　　　　　　　　　　　　Opinion No. 2021 DNH 079
Lawrence Connell


O R D E R

Pilatus Bank PLC, which is located in Malta, brought an ex parte petition pursuant to 28 U.S.C. § 1782, seeking judicial assistance in obtaining discovery from Lawrence Connell for use in a foreign tribunal.  The court determined that Pilatus had not satisfied the requirements of § 1782 and denied the petition without prejudice to serving an amended petition on Connell. Pilatus has served the amended petition, and Connell has filed his response, objecting to the discovery that Pilatus seeks.


Standard of Review

Section 1782(a) provides as follows:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested

person and may direct that the testimony or statement
be given, or the document or other thing be produced,
before a person appointed by the court.  By virtue of
his appointment, the person appointed has power to
administer any necessary oath and take the testimony
or statement.  The order may prescribe the practice
and procedure, which may be in whole or part the
practice and procedure of the foreign country or the
international tribunal, for taking the testimony or
statement or producing the document or other thing.
To the extent that the order does not prescribe
otherwise, the testimony or statement shall be taken,
and the document or other thing produced, in
accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or
statement or to produce a document or other thing in
violation of any legally applicable privilege.

In summary, section 1782(a) "authorizes district courts to order

persons residing in their district to participate in discovery

'for use in a proceeding in a foreign or international tribunal'

when an application for such discovery is made by a foreign or

internal tribunal, or by 'any interested person.'" In re

Porsche Automobil Holding SE, 985 F.3d 115, 120 (1st Cir. 2021)

(quoting § 1782(a)).  Therefore, a court is authorized to

provide aid in discovery if:

1) the person from whom discovery is sought "resides
or is found" in the district where the court sits; 2)
the request seeks evidence (the "testimony or
statement" of a person or the production of a
"document or other thing") "for use in a proceeding in
a foreign or international tribunal"; 3) the request
is made by a foreign or international tribunal or by
"any interested person"; and 4) the material sought is
not protected by "any legally applicable privilege."

In re Schlich, 893 F.3d 40, 46 (1st Cir. 2018).  The party
seeking discovery bears the burden of meeting the statutory
requirements.  Id. at 49.

If those requirements are met, the court then has
discretion whether to grant the petition.  Porsche, 985 F.3d at
120.  Under the statute, the court must first determine whether
it is authorized to order the requested discovery and then, if
authorized, the court determines whether it should grant the
discovery request.  Food Delivery Holding 12 S.A.R.L. v. DeWitty
& Assocs. CHTD, 2021 WL 860262, at *2 (D.D.C. Mar. 8, 2021).
In exercising discretion, courts consider four factors, the
first three of which pertain to aspects of the foreign
proceedings and the foreign tribunal, and the fourth of which
addresses the burden that would be imposed on the target of the
discovery.  Intel Corp. v. Advanced Micro Devices, Inc., 542
U.S. 241, 264-65 (2002); Schlich, 893 F.3d at 47.

The first factor is whether the person from whom discovery
is sought is a party in the foreign proceeding.  Id. at 47. If
so, there is less need for the evidence to be produced under
§ 1782 because the foreign tribunal can order discovery.  Id.
The second factor considers the nature of the foreign tribunal
and the proceedings and whether the country and/or the tribunal
would be receptive to aid by a court in the United States.  Id.
The third factor is whether the discovery request is an attempt

to avoid or circumvent discovery restrictions or policies in the foreign country or in the United States.  Id.  The fourth factor considers whether the discovery request is "unduly intrusive or burdensome."  Id.

### Background

Pilatus was a bank operating in Malta that was owned, indirectly, by Ali Sadr Hashemi Nejad ("Sadr").  The New York County District Attorney's Office began an investigation of Sadr in 2014, based on suspected involvement in activities that included money laundering, offering a false instrument for filing, and falsifying business records in a variety of business ventures.  United States v. Nejad, 436 F. Supp. 3d 707, 715 (S.D.N.Y. 2020).  After a review of the data gathered through search warrants, the District Attorney's Office referred the case to the United States Attorney's Office for the Southern District of New York for federal prosecution.  Id. at 716.  On March 19, 2018, Sadr was indicted on six charges:  conspiracy to defraud the United States, conspiracy to violate the International Emergency Economic Powers Act, bank fraud, conspiracy to commit bank fraud, money laundering, and conspiracy to commit money laundering.

On March 16, 2020, the jury found Sadr guilty on five of the six charges, and his sentencing was scheduled for August 17,

2020.  Sadr moved to vacate the guilty verdict and for a new trial, and the government agreed, acknowledging the government's failures to disclose potentially exculpatory evidence.  United States v. Nejad, 487 F. Supp. 3d 206, 207 (S.D.N.Y. 2020).  On July 17, 2020, the guilty verdict was vacated, and the indictment was dismissed with prejudice, which ended the criminal proceeding against Sadr.[1]  United States v. Nejad, 18-cr-224-AJN (S.D.N.Y. July 17, 2020); Nejad, 487 F. Supp. 3d at 207.

In the amended petition, Pilatus alleges that three days after Sadr's indictment, on March 21, 2018, the Maltese Financial Services Authority ("MFSA") took over Pilatus, divested Sadr of his voting rights, stripped the directors of authority, and halted business at the bank.  The next day, the

---

[1] In its amended petition, Pilatus represents that Sadr was improperly indicted and was later "exonerated".  The cited decision in the Southern District of New York states that Sadr was found guilty, but the verdict later was vacated and the indictment dismissed because of prosecutorial misconduct due to withholding evidence.  United States v. Nejad, 487 F. Supp. 3d 206, 207 (S.D.N.Y. 2020).  The decision says nothing about an improper indictment or exoneration.  In its reply, Pilatus asserts that Sadr was "acquitted", relying on the opinion of Sadr's lead defense counsel in the criminal action against Sadr in the Southern District of New York.  Defense counsel wrote in a letter to Pilatus's counsel in the annulment action that he believed that Sadr did not commit the crimes of conviction, that he would have been exonerated at trial if the withheld evidence had been disclosed, and that the jury's verdict was vacated.  Defense counsel's opinion about his client, however, does not show that Sadr was acquitted or exonerated in that case.

MFSA appointed Connell to oversee Pilatus as its "Competent Person."  The MFSA then petitioned the European Central Bank ("ECB") to revoke Pilatus's banking license.  The revocation of the license by the ECB occurred on November 2, 2018, which shut down the bank.

Connell performed his duties as Competent Person under an Appointment Letter with the MFSA, which included a comprehensive review of Pilatus's affairs and actions for taking charge of its assets.  Connell completed most of his work as Competent Person between March of 2018 and November of 2018.  After the ECB revoked Pilatus's license, Maltese law enforcement took control of the Pilatus building, and Connell went back to the United States.  Connell returned to Malta for January and February of 2019 to oversee the seizure of Pilatus's property by Maltese police and Malta's Financial Intelligence Analysis Unit.  He resigned his appointment as Competent Person as of January 13, 2021, and another Competent Person was appointed.

Pilatus, represented by Okko Hendrik Behrends, a lawyer in Frankfurt, Germany, initiated an action against the ECB in the Court of Justice of the European Union on January 15, 2019.[2]  The Court of Justice is located in Luxembourg.  In that action,

---

[2] In the action in this court, however, Pilatus is represented by Christopher T. Vrountas who practices in Manchester, New Hampshire.

referred to as the annulment action, Pilatus asked the court to annul the ECB's order revoking Pilatus's banking license.

To show the issues and claims in the annulment action, Pilatus submitted a report for the hearing in that case that was prepared and submitted by the judge and is dated October 15, 2020.  The annulment action is identified as an application based on Article 263 FEU seeking annulment of the decision of the ECB on November 2, 2018, "by which it withdrew the authorisation of Pilatus Bank plc to take up the business of a credit institution," that was brought by Pilatus Bank plc and Pilatus Holding Ltd., referred to as the "applicants".  Doc. no. 6-3, at *107.  The report begins with a list of facts as background for the case, followed by the procedural history of the case.

The report then summarizes the eleven claims brought in support of annulment.  The first claim raises a "right to good administration" and challenges the ECB's failures to act with respect to the MFSA's actions that withdrew the bank's authorizations and replaced the bank's representatives with a Competent Person.  The second claim argues that Sadr's indictment was not a proper reason to withdraw the bank's authorization.  The third claim challenges the ECB's exercise of its discretion and argues that the ECB must prove that it properly exercised its discretion with respect to the MFSA

withdrawal of the bank's authorization.  The fourth claim is that the ECB failed to examine relevant facts and to assess the facts impartially and objectively because it relied on the MFSA's conclusions that were drawn from the Sadr criminal case. The fifth claim is that the ECB infringed the principle of proportionality by not considering alternatives more proportional to the issue than withdrawing authorization of the bank, such as an announcement that Sadr's charges were based on United States sanctions that are not recognized in Europe.  The sixth claim is that the ECB infringed the "nemo auditor principle" because the ECB's failure to intervene in the MFSA's reaction to Sadr's indictment caused negative consequences for the bank.

In the seventh claim, the applicants assert that the ECB infringed their right to the presumption of innocence by relying on the charges against Sadr without examining the underlying facts.  The applicants allege in the eighth claim that the ECB infringed the principles of equal treatment and non-discrimination because banks owned by Maltese citizens were not treated the way the applicants were treated when Sadr was indicted.  The ninth claim is that the ECB infringed "Article 19 and recital 75 of Regulation No. 1024/2013" through a misuse of powers because the withdrawal of the bank's authorization and appointment of the Competent Person happened so quickly that the

8

MFSA could not properly examine Sadr's indictment and made the decision to withdraw authorization based on other considerations.  Doc. no. 6-3, at *120-21.  In the tenth claim, the applicants allege that their rights of defense and their right to be heard were infringed because the MFSA appointed the Competent Person who was regarded as the applicants' sole representative, although the ECB later changed its position on the representative.  The eleventh and last claim is that the ECB failed to abide by its obligation to state reasons because it provided "superficial and vague reasoning in the contested decision, which does not make it possible to determine whether it was justified, to assess the severity of the alleged misconduct which gave rise to the indictment of Mr. Sadr in the United States and to verify that that conduct was reprehensible from the perspective of EU law."  Doc. no. 6-3, at *122.

Behrends states in a supplemental declaration that a hearing was held in the annulment action on February 26, 2021.[3] Doc. no. 18-2. ¶ 8.  Connell contends that the annulment action has now proceeded to a point where the court will not take

_____

[3] Pilatus also represents that the hearing was continued and cites Behrends's declaration, paragraph 11, in support. Behrends, however, states at paragraph 8 that the hearing was held on February 26, as scheduled, and states at paragraph 11 that he cannot speculate about the next procedural steps." Doc. 18-2, ¶ 11.  Behrends also says that "[i]t is possible that the General Court will stay the proceedings." Id.

additional evidence.  Pilatus contends that it can still submit evidence in the annulment action and in any appeal that may be taken after a decision in the annulment action.

Pilatus, its directors, and/or Sadr have initiated proceedings before the Financial Services Tribunal that challenge the actions taken by the MFSA with respect to Pilatus.[4] Connell has testified before the Malta Financial Services Tribunal in those proceedings, and Connell states that the MFSA raised privilege objections to his testimony.  Those proceedings were postponed several times, at least partly due to the COVID-19 pandemic and, apparently, were scheduled to continue by video in mid-April.  Connell represents that the MFSA has reserved its objections to his testimony based on privilege and that the privilege issues remain unresolved.  Connell further represents that some of the discovery that Pilatus seeks would violate the privileges asserted by the MFSA and his obligations to keep investigatory matters confidential.

Pilatus provides the declaration of Jonathan Thompson who represents Pilatus Holding Ltd. in the proceedings before the Malta Financial Services Tribunal.  Thompson argues that privileges raised by Connell under Malta law do not apply to the discovery Pilatus seeks from Connell here.  Instead, Thompson

---

[4] Pilatus does not seek discovery for purposes of the proceedings before the Tribunal.

states, Connell is asserting professional secrecy and
confidentiality, which do not preclude testimony for purposes of
proceedings before the Tribunal.  Thompson further states that
the privilege and secrecy issues were addressed by the Tribunal,
which ordered Connell to testify, except as to matters
pertaining to a pending criminal inquiry.  He also states that
those proceedings are ongoing, and that further testimony and
evidence has not been obtained from Connell because he returned
to the United States.

Pilatus alleges that it is contemplating filing an action
for damages against the ECB.  Behrends states in his declaration
that the action will be brought pursuant to "Art. 340 Treaty on
the Functioning of the European Union."  Doc. no. 6-9, at *1.
Behrends asserts that the damages action is not dependent on a
favorable outcome in the annulment action so that Pilatus can
pursue the damages action even if it is unsuccessful in the
annulment action.

In the amended petition, Pilatus identifies the following
topics as being at issue in the annulment action and/or in the
potential damages action:

    a. the MFSA's reasons for selecting Mr. Connell;
    b. the persons and entities that tasked and
    compensated Mr. Connell, and whether a conflict of
    interest with the bank existed;
    c. the objectives Mr. Connell was given with respect
    to Pilatus, including, without limitation, whether and
    when he was tasked with the permanent closure of the

11

bank, whether he was tasked with protecting the bank's
value and assets for resale in the future, and efforts
(if any) to undermine public confidence in the bank;
d. the MFSA's justification for its actions;
e. Mr. Connell's observations concerning Pilatus'
financial strength at various times throughout his
tenure as competent person;
f. whether the closure of Pilatus was predetermined;
g. issues relating to the MFSA's motives and
credibility and how they affected the MFSA's
objectivity;
h. the MFSA's directives, ideas, objectives, and
concerns relating to Pilatus and how and whether they
evolved throughout the process;
i. his knowledge of the reasons and purported
justifications for petitioning the ECB to revoke
Pilatus' license, his involvement in that process, and
any recommendations he made, including whether he
opposed revoking Pilatus' license;
j. whether, as the ECB and the MFSA claim, there was
an independent basis to revoke Pilatus' license;
k. whether the ECB's and the MFSA's purported reasons
for revoking Pilatus' license are legitimate
justifications or based on conditions created by the
MFSA's conduct and not Mr. Sadr's now-dismissed
indictment;
l. the extent to which the ECB conducted an
independent review of Pilatus' financial viability and
the MFSA's justifications for its regulatory actions
and its petition to revoke Pilatus' license;
m. damages caused by the ECB's and MFSA's misconduct;
n. records in Mr. Connell's possession relating to
each of the foregoing, including, without limitation,
his extensive communications with the MFSA; and
o. records in Mr. Connell's possession relating to any
communications he may have had with third parties
relating to any of the foregoing.

Am. Pet. Doc. no. 6 at *10.  Through the petition, Pilatus asks

the court to issue subpoenas to require Connell to testify at a

deposition and to produce documents, information, or objects.

Pilatus's proposed deposition subpoena does not list the matters

to be addressed through Connell's testimony.  See doc. 6-10, at

*1.   The proposed subpoena for production refers to Schedule A

for the documents requested, which lists the following:

    1.  A copy of your current resume and job experience.
    2.  All documents and communications made by You to
    obtain Your appointment as the Competent Person.
    3.   Your resume, CV, or other documents reflecting
    Your experience with banking laws, regulations, and
    operation in Europe and Malta before You were
    appointed Competent Person.
    4.   All documents and communications concerning Your
    appointment as Competent Person, including, without
    limitation, the scope of Your engagement; the vetting
    and qualification process; Your roles,
    responsibilities, and authority; negotiations; the
    terms and conditions of Your engagement; the final
    agreed upon engagement and any amendments; and any
    other changes to such terms.
    5.  All documents and communications concerning any
    payments, compensation, or anything of value provided
    or promised to You directly or indirectly concerning
    Pilatus or Your role as Competent Person.
    6.   All documents and communications concerning Your
    authority as Competent Person, including, without
    limitation, whether and from whom You requested or
    received approval or confirmation before taking action
    as Competent Person or making decisions on behalf of
    Pilatus.
    7.   All documents and communications sufficient to
    identify to whom You reported, either formally or
    informally, as Competent Person, and all documents and
    communications concerning any reports or updates You
    provided to such persons or entities concerning
    Pilatus or Your work as Competent Person.
    8.  All documents and communications exchanged between
    or among You and the ECB, the MFSA, or the Financial
    Conduct Authority (UK) concerning Pilatus or Mr. Sadr.
    9.   All documents and communications concerning any
    instructions, suggestions, directives, tasks, duties,
    objectives, goals, or advice You received from the ECB
    or the MFSA concerning Pilatus or Your role as
    Competent Person.
    10.  All documents and communications concerning the
    MFSA's   reasons and justifications for assigning
    Pilatus a Competent Person.

11.  All documents and communications concerning any payments or obligations for payment concerning Pilatus about which You were consulted, informed, or involved.

12.  All documents and communications concerning the License Withdrawal and License Withdrawal Proposal, including, without limitation, the reasons and justifications for seeking the License Withdrawal and whether any alternative measures were considered.

13.   All documents and communications You reviewed in assessing Pilatus' regulatory and financial status at the time You became Competent Person and all documents concerning Your impressions of Pilatus' regulatory and financial status, including but not limited to any notes, reports, or communications concerning such impressions.

14.  All documents and communications concerning Pilatus' reputation.

15.  All documents and communications concerning any contracts, commitments, or pledges entered into or made by Pilatus or on its behalf to any person or party, including, without limitation, other financial institutions and banks.

16.  All documents and communications concerning the collection of interest income and other receivables of Pilatus.

17.  All documents and communications concerning any effort by You to preserve, improve, or increase Pilatus' financial status, operations, value, viability, profits, revenues, reputation, and regulatory compliance.

18.  All documents and communications concerning any effort by You to hinder, impair, or stop Pilatus' operations and transactions, or otherwise reduce or decrease Pilatus' financial status, operations, value, viability, profits, revenues, reputation, and regulatory compliance.

19.  All documents and communications concerning the assets of Pilatus or its clients.

20.  All documents and communications concerning Pilatus' internal and external audits, including, without limitation, the treatment of Pilatus' financials, statutory requirements, and any engagements.

21.  All documents concerning communications between Pilatus and any corresponding banks, their representatives, or their regulators.

22.   All documents concerning communications referring to and/or describing Pilatus exchanged between and/or among any corresponding banks, their representatives, or their regulators.

23.   All documents and communications concerning any negative impression or regulatory concerns You, the MFSA, or any regulator had about Pilatus prior to Your appointment as Competent Person.

24.   All documents and communications concerning any reports or observations made by regulatory and supervisory institutions in Malta and outside of Malta concerning Pilatus, including, without limitation, its financials, regulatory noncompliance, breaches, or notices of breaches.

25.   All documents and communications exchanged between You and the press, including, without limitation, any official public comments or press releases, concerning Pilatus or Mr. Sadr.

26.  All documents and communications concerning Mr. Sadr.

27.   All documents and communications concerning any employment or staffing actions taken by or on behalf of Pilatus, including without limitation, new hires, dismissals, changes in employee roles or responsibilities, and any assessment of employee loyalty, fidelity, or friendliness to Pilatus or Mr. Sadr.

28.   All documents and communications concerning any work or tasks outsourced or assigned to any third parties, whether by You, or otherwise, including, without limitation, all documents and communications concerning the reasons for doing so and costs.

29.   All documents and communications concerning the board members of Pilatus, their interests in Pilatus, objections to their involvement in Pilatus' operations, their work concerning the preservation of assets, and shareholder interests.

30.  All documents and communications concerning any refusal by You to meet or provide information concerning Pilatus to its board of directors, board committee members, Mr. Sadr, and Pilatus' clients.

31.   All documents and communications concerning Your schedule and any meetings You had as Competent Person or in consideration of Your appointment as Competent Person, including, without limitation, any calendar entries or date books You kept.

32.  All notes and reports You drafted or prepared in
Your role as Competent Person or inconsideration of
Your appointment as Competent Person.

Doc. no. 6-10, at *8-*12.

Pilatus first filed an ex parte petition under § 1782.  In
response to that petition, the court concluded that Pilatus had
not met the statutory requirements and also concluded that it
would deny the petition based on the discretionary factors.
Doc. no. 3.

With respect to the first statutory requirement, the court
found that Pilatus had not shown that Connell resides in New
Hampshire.  The court found that Pilatus had shown that it was
an interested person in the annulment action for purposes of
§ 1782(a) but also found that while it was plausible the
information Pilatus sought would be used in the annulment
action, Pilatus had not shown that the information was actually
relevant or admissible.[5]  The court further concluded that

_____

[5] Pilatus represents that the court held in its prior order
that Pilatus met the statutory requirement that it was seeking
information from Connell for use in a foreign proceeding.
That is inaccurate.  In the prior order, the court stated:
"Without deciding whether the requested discovery is actually
relevant or admissible in the annulment action, it is plausible
that the requested discovery may be used in that proceeding."
Doc. no. 3, at *6.  Further, the court's prior order was based
on the ex parte petition, which has been superseded by the
amended petition, and Connell has filed a response.  Therefore,
the rulings in the prior order do not apply to the amended
petition.
As the First Circuit has said, an inaccurate argument by a
party "resembles the thirteenth chime on a clock:  You not only

16

Pilatus had not shown that the possible damages action was within reasonable contemplation for purposes of satisfying the statutory requirements.  The court also noted the lack of information about whether a question of privilege would arise with respect to the requested information.

Pilatus was given time to file an amended petition under § 1782 to be served on Connell.  Pilatus filed and served the amended petition, and Connell has responded.


## Discussion

Pilatus seeks information and documents from Connell that it represents it will use in the annulment action and the potential damages action.  Connell objects to the discovery on the grounds that Pilatus has not met the requirement of showing that the information will be used in a foreign proceeding and asserts that the information sought is subject to privileges and other restrictions.  Even if Pilatus could meet the statutory requirements, Connell contends that the Intel factors for exercising the court's discretion weigh against ordering the assistance with discovery that Pilatus seeks.

---

know it is wrong, but it also causes you to wonder about everything else you hear from that clock."  In re Porsche, 985 F.3d at 119.

17

I.   <u>Statutory Requirements</u>

Based on the amended petition and Connell's response, there
is no dispute that Connell resides in and is found in New
Hampshire.  Pilatus is an interested person in the annulment
action, and the annulment action is a foreign proceeding within
the meaning of § 1782(a).  The parties dispute whether the
requested discovery will be used in the annulment proceeding,
whether the potential damages action is within reasonable
contemplation, and whether the requested discovery or any part
of it is protected by privilege.


A.   <u>Use of Discovery in Annulment Action</u>

To satisfy the "for use" requirement, the petitioner must
show that the discovery sought "will be employed with some
advantage or serve some use in the proceeding." Mees v. Buiter,
793 F.3d 291, 298 (2d Cir. 2015).  Rule 26(b) requires that
information sought through discovery be relevant to a claim or
defense.  Therefore, information requested under § 1782 that is
irrelevant in the foreign proceeding will fail to meet the
statutory 'for use' requirement. Schlich, 893 F.3d at 52.

It appears, although it is far from certain, that the
annulment action has proceeded through the presentation of
evidence to the decision-making stage.  Although Pilatus
represents that it still could present new evidence and could

present new evidence on appeal, it has not shown how new evidence procured through the requested discovery would be introduced.  Pilatus has not shown that the discovery it seeks from Connell would be used in the annulment action.

In addition, Pilatus has not shown how the discovery it seeks from Connell is relevant to the claims brought in the annulment action.[6]  Cf. In re Application for Snowflake Inc. v. Yeti Data, Inc., 2021 WL 1056550, at *6 (N.D. Cal. Mar. 18, 2021) (where successful petitioner provided detailed explanation of relevance).  The eleven claims are brought against the ECB, but the information Pilatus seeks from Connell focuses on the MFSA's actions and motives, Connell's qualifications for appointment as Competent Person by the MFSA, instructions from the MFSA, and his actions as Competent Person.  Pilatus makes no effort to show how the information it seeks from Connell is relevant to specific claims or issues in the annulment action against the ECB, and Connell denies any relevance.[7]  As a result,

---

[6] Connell contends with some persuasive force that if the discovery were needed in the annulment action, Pilatus would not have waited so long to file its petition.  The annulment action was initiated on January 15, 2019, and Pilatus filed its ex parte petition under § 1782 in this court on November 13, 2020, after the prehearing briefing was submitted in the annulment action and after the judge had issued the prehearing report.

[7] As is stated above, Pilatus bears the burden to show that it has met the requirements under § 1782, which include showing that the requested discovery will be used in the foreign proceeding.  Further, under the Federal Rules of Civil

Pilatus has not shown that the discovery it seeks from Connell is relevant to its claims and would be used in the annulment action.

### B.  Use in the Potential Damages Action

Pilatus represents that it will bring an action in the General Court of the European Union against the ECB for damages that Pilatus incurred because of the allegedly wrongful closure of the bank.  Pilatus further represents that under the applicable statute of limitations it has until November of 2023 to bring a damages action.  In addition, it contends that it is required to present its entire evidentiary case at the time of filing a damages action, which requires discovery before the action is filed.

Connell argues that the damages action is contingent on a decision in Pilatus's favor in the annulment action.  Pilatus states that it is awaiting the outcome in the annulment action, before filing a damages action, but also states that while the outcome is relevant to a potential damages action, a positive outcome is not necessary to bring the damages action.  Pilatus contends that even if the decision in the annulment action is

_____

Procedure, the party seeking to compel discovery bears the burden of showing that it is relevant to a claim or defense in the case.  Fed. R. Civ. P. 26(b)(1); Culbreth v. Macri, 2020 DNH 116, 2020 WL 3868790, at *1 (D.N.H. July 9, 2020).

not in its favor, it will bring a damages action based on
"recent Maltese legal holdings rendering the conduct of the MFSA
and the ECB in imposing the Competent Person as the exclusive
representative of the bank legally improper—in addition to their
wrongful total exclusion of the bank's directors from any
decision-making concerning the marshaling of the bank's assets."[8]
Doc. no. 6 at *18.

To meet the "for use" requirement under § 1782 when a
foreign proceeding is not pending, the petition must show that
the proceeding is "reasonably contemplated." Intel, 524 U.S. at
258. For a proceeding to be reasonably contemplated, the
petitioner must have more than a subjective intent to bring an
action and must provide "objective indicium" to show that an
action is contemplated. Certain Funds, Accounts and/or
Investment Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123 (2d Cir.
2015). It is not enough that a petitioner has hired counsel and
is discussing the possibility of bringing an action. Id. at

---

[8] Pilatus cites Behrends's declarations in support.
Behrends states that the representative issue is a "key issue"
in the annulment action. He also argues that decisions by the
Maltese Court of Appeal, the European Court of Human Rights, and
the Grand Chamber of the Court of Justice of the European Union
have rejected the theory that once appointed the Competent
Person is the sole representative of the bank. Doc. no. 6-1, at
*3; doc. no. 6-9. It remains unclear, however, how that premise
supports Pilatus's potential damages action against the ECB or
how a damages action could be filed if the court decides against
Pilatus on that issue.

124.  A petitioner also cannot obtain discovery under § 1782 to
fish for information to support a speculative proceeding.  In re
Inmobiliaria Tova, S.A., 2021 WL 925517, at *8 (S.D. Fl. Mar.
10, 2021).  Therefore, when discovery is sought simply for the
purpose of determining whether to bring an action "depending on
what the evidence shows," the potential action is at best
speculative and does not meet the requirement of being within
reasonable contemplation.  Mangouras v. Squire Patton Boggs, 980
F. 3d 88, 101 (2d Cir. 2020).

Connell objects to the petition, asserting that the
discovery sought by Pilatus is merely a fishing expedition to
find grounds for damages claims that have not yet been
formulated.  Pilatus has not provided any concrete explanation
of its potential damages action, such as what claims it intends
to bring, the legal elements of the claims, or what proof would
be required to succeed on its potential damages claims.[9]  See,

_____

[9] Pilatus cites Behrends's declarations, doc. no. 6-1, ¶ 14
and doc. no. 6-9 at ¶¶ 2 and 7, as the source of specifics about
the potential damages action.  In those paragraphs, Behrends
cites Article 340 Treaty on the Functioning of the European
Union and says that other cases in the Court of Justice of
European Union show that Pilatus was illegally deprived of
independent representation but does not identify the claims
Pilatus intends to bring in a potential damages action or the
legal bases for claims.  Pilatus also cites a page in the
application for annulment that provides no information about a
possible damages action, doc. no. 6-2, at *17.  Further, Pilatus
relies on Behrends's opinion that it is "beyond doubt" that a
damages action will be initiated, which is apparently at least
partly based on the outcome in another case against the MFSA,

e.g., Mangouras, 980 F.3d at 101.  Pilatus also has not shown
that the discovery it seeks would be used in a damages action to
increase its chances of success.  See Mees, 793 F.3d at 299.
Instead, it appears that Pilatus is seeking a wide range of
information from Connell for purposes of determining whether to
bring an action for damages and, if so, what claims might be
alleged.

It is Pilatus's burden to show that it is seeking discovery
of relevant information for use in a foreign proceeding.  For
purposes of the damages action, Pilatus must show that the
action is reasonably contemplated, which Pilatus has not shown.
Therefore, Pilatus has not met the requirement under § 1782(a)
that the discovery it seeks is for use in a foreign proceeding.

---

which was decided by the Court of Appeal of Malta, dated
November 5, 2018.  See doc. no. 1-5, at *39-*54.  In that case,
it appears that the MFSA appealed a lower court decision, in
part, on the standing of the plaintiff bank.  Pilatus has not
clearly demonstrated the relevance of that decision to its
potential damages action.
      Pilatus asserts that it need not identify any of the
potential claims or the legal bases for damages claims because
the court cannot consider the merits of a potential action for
purposes of § 1782.  Pilatus misunderstands the necessary
analysis.  In order to decide whether the potential action is
reasonably contemplated and whether the requested discovery will
be used in a contemplated action, the court must know whether
Pilatus has formulated any claims and the elements of those
claims, which is not an inquiry into the merits of a potential
action.

C.   Privilege

Connell asserts that much of the requested discovery is protected by privileges under applicable law in the European Union and Malta.  Connell further states that the ECB and the MFSA hold the applicable privileges and have instructed him to protect privileged information.  Pilatus disputes Connell's assertions of privilege and argues that the Malta Financial Services Tribunal has determined that no privileges apply to the information it is seeking and that Connell cannot show any applicable privilege.

1.   Burden on Privilege Issue

The parties disagree about which of them bears the burden with respect to the requirement under § 1782(a) that the requested discovery must not be in violation of a legally applicable privilege.  Pilatus interprets certain decisions, which list only three rather than four statutory requirements under § 1782, to suggest that the burden is on Connell to show that a privilege applies.  Connell argues that the absence of privilege is a statutory requirement, and the burden is on Pilatus to show that the statutory requirements are met. Neither argument is persuasive.

24

Section 1782(a) requires that discovery must be taken and produced "in accordance with the Federal Rules of Civil Procedure," unless the court orders otherwise. Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  When privilege is raised to block a discovery request, the party invoking the privilege bears the burden to show that the privilege applies to protect against the requested discovery and that it has not been waived. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); accord Culbreth v. Macri, 2020 DNH 116, 2020 WL 3868790, at *1 (D.N.H. July 9, 2020); Bratt v. Jensen, Baird, Gardner & Henry, P.A., 2019 WL 4306972, at *1 (D. Me. Sept. 11, 2019).  Courts use the procedures provided by the Federal Rules of Civil Procedure, including procedures to address issues of privilege, when appropriate for purposes of a petition under § 1782(a).  See, e.g., In re Petition of the Republic of Turkey, 2020 WL 4035499, at *9 (D.N.J. July 17, 2020); In re Caterpillar, Inc., 2020 WL 1923227, at *15, n.14 (M.D. Tenn. Apr. 21, 2020); In re West Face Capital Inc., 2019 WL 5617891, at *5 (N.D. Calif. Oct. 31, 2019); In re financialright GmbH, 2017 WL 2879696, at *6 (S.D.N.Y. June 22, 2017).

Connell contends that Pilatus bears the burden to show that the discovery it seeks is not protected by privilege.  The court has concluded, however, that Connell bears the burden of showing that privilege applies to the requested discovery.


2.  Application of Privilege

Connell asserts that privileges under Maltese law protect from disclosure the discovery Pilatus seeks.  Pilatus contends that Connell has not met his burden to show that any privilege applies.

The record shows a variety of factual and legal disputes about whether and to what extent any privilege would apply under Maltese law to protect the requested discovery.  The same privilege issues appear to be pending in proceedings before the Malta Financial Services Tribunal.  Based on the current record, this court cannot determine whether Connell can show that privileges apply to preclude the discovery that Piltaus seeks here.

Based on the current record, Connell has raised issues about possible privilege protection but has not met the burden to show that the requested discovery is protected by an applicable privilege.

26

D.  Summary

Pilatus has not shown that the discovery it seeks is for use in a proceeding in a foreign tribunal, as is required under § 1782(a).  For that reason, Pilatus has not met the requirements under § 1782(a), which is necessary before the court is authorized to grant its petition.  Therefore, the amended petition is denied.  Further, even if the "use" requirement could be met, the court must determine whether it should require the discovery that Pilatus requests.

II.  Discretionary Factors

In addition to disputing Pilatus's showing on the statutory requirements, Connell asks the court to deny the petition based on the discretionary factors.  Pilatus argues that the discretionary factors weigh in favor of ordering discovery.

A.  Party in Foreign Proceeding

Connell is not a party in the annulment action or in the proceedings that Pilatus has brought in Malta.  He has, however, given testimony in the proceedings before the Malta Financial Services Tribunal.  Connell asserts that much of the discovery Pilatus seeks is available from the ECB or the MFSA in proceedings in Malta or in the annulment action and should be requested from those entities.  Pilatus counters that there is

27

no requirement under § 1782 that it exhaust other means for obtaining the discovery before filing a petition here.

Parties are not required to seek discovery in the foreign tribunal before petitioning for aid from a United States District Court. In the Matter of the Application of Euromepa S.A., 51 F.3d 1095, 1098 (2d Cir. 1995). Nevertheless, the "critical question," for purposes of the first discretionary factor, is whether the information sought by a petitioner under § 1782 is also within the foreign tribunal's jurisdictional reach. In re Valitus, Ltd., 2020 WL 6395591, at *6 (D. Mass. Nov. 02, 2020). The ECB is the defendant in the annulment action and, therefore, is within the jurisdiction of the General Court of the European Union for purposes of obtaining discovery.

Pilatus has not addressed whether or to what extent it has received the information it seeks here through discovery in the annulment action. It also has not addressed whether it has sought information from the MFSA or whether the MFSA is within the jurisdictional reach of the General Court of the European Union where the annulment action is pending. The MFSA is a party to the proceedings before the Malta Financial Services Tribunal. Because at least the ECB is within the jurisdictional reach of the court in the annulment action, Pilatus has not shown that the information it seeks is beyond the jurisdictional reach of the General Court.

B.   <u>Whether Tribunal Would be Receptive to Aid</u>

The annulment action is pending in the General Court of the European Union.  Pilatus provides the declaration of Behrends to show that there is no indication that the court would be unreceptive to aid in discovery by this court.  Although Pilatus asserts that the General Court will still accept evidence in the annulment action, despite its procedural posture, it has not shown that the discovery it seeks is relevant in that action. In these circumstances, Pilatus has not shown that the General Court would be receptive to this court's aid in discovery.[10]

Therefore, the second discretionary factor weighs against exercising authority under § 1782 to assist in discovery.

C.  <u>Attempt to Avoid Discovery Restrictions in Foreign Proceeding</u>

The third factor, whether Pilatus's petition is an attempt to avoid or circumvent discovery restrictions or policies in a foreign country or the United States, raises concerns.  Neither party has presented evidence or argument about legal or policy restrictions in the General Court of the European Union, other than the procedural posture of the annulment action.  The

---

[10] Connell argues that the ECB and the MFSA are not receptive to assistance from the court.  That, however, is not the issue for purposes of the second <u>Intel</u> factor.

29

privilege issue has arisen in proceedings before the Malta
Financial Services Tribunal, which is not the proceeding where
Pilatus proposes to use the discovery it seeks.

Connell contends that the discovery Pilatus seeks is
contrary to Maltese law and that the Financial Services Tribunal
has ruled and will continue to rule on the privilege and
confidentiality issues in those proceedings.  The Tribunal has
blocked some of the examination of Connell based on privilege
and confidentiality but is now, apparently, allowing the
examination to go forward.  The examination remains subject,
however, to objections based on privilege and confidentiality.

To the extent Pilatus is seeking discovery through its
petition to use in the Financial Services Tribunal proceedings,
that would be an inappropriate use of § 1782.  See In re
Newbrook Shipping Corp., --- F. Supp. 3d ---, 2020 WL 6451939,
at *6 (D. Md. Nov. 3, 2020).  To the extent the discovery was
intended to be used in the annulment action, Pilatus has not
shown that it is relevant or that it may be introduced there.
The privilege and confidentiality issues weigh against ordering
the requested discovery.


D.   Unduly Intrusive or Burdensome

The fourth factor directs the court to consider whether the
discovery requests are unduly intrusive or burdensome.  In

30

making that determination, the court considers the relevance of
the discovery sought, the party's need for that information, the
breadth of the request, the particularity of the request, and
the burden imposed on the target party.  In re Vale S.A., 2021
WL 311236, at *2-*3 (S.D.N.Y. Jan. 29, 2021).  As is discussed
above, Pilatus has not shown the relevance of or its need for
the discovery it seeks in the annulment action or the potential
damages action.  For that reason, the discovery request appears
to be unduly burdensome.[11]


    E.  Summary

    The Intel discretionary factors weigh against providing the
discovery that Pilatus seeks here.  For that reason, even if
Pilatus could satisfy the requirements of § 1782(a), the court
would decline to exercise that authority in this case.

_____

    [11] Connell contends that discovery Pilatus seeks would be
unduly burdensome because it seeks information about the motives
of the ECB and the MFSA, which should be obtained from those
entities.  Connell notes that because the ECB is a party in the
annulment proceeding and the MFSA is a party in the proceedings
before the Financial Services Tribunal the information is
available in those proceedings.  There is no exhaustion
requirement before seeking discovery under § 1782, however.  For
that reason, the availability of the discovery elsewhere does
not demonstrate an undue burden.  Vale, 2021 WL 311236, at *3.

Conclusion

For the foregoing reasons, the amended petition for assistance in discovery (document no. 6) is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.


Joseph A. DiClerico, Jr.
United States District Judge

May 11, 2021

cc:  Counsel of record.